## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLEY JAMES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-591** |
| **ORLEANS PARISH PRISON, ET AL.** | **SECTION "H"(1)** |

### REPORT AND RECOMMENDATION

Plaintiff, Charley James, a state pretrial detainee, filed the instant *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983. In the original complaint, he sued the Orleans Parish Prison, claiming that he was stabbed on three separate occasions due to a lack of security at the jail.[1]

On March 17, 2014, the undersigned notified plaintiff that the Orleans Parish Prison was not a proper defendant and ordered him to file an amended complaint naming the actual person or persons who allegedly violated his rights.[2] Plaintiff thereafter filed an amended complaint to add Orleans Parish Sheriff Marlin N. Gusman as a defendant.[3] Plaintiff also subsequently amended his complaint to attach copies of his medical records and clarify his prayer for relief.[4]

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 4.

[3] Rec. Doc. 5.

[4] Rec. Docs. 19, 23, 24, and 27.

Sheriff Gusman has filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[5] "A motion under Rule 12(c) for failure to state a claim is subject to the same standards as a motion to dismiss under Rule 12(b)(6)." *In re* Great Lakes Dredge & Dock Co. LLC, 624 F.3d 201, 209-10 (5th Cir. 2010). The United States Fifth Circuit Court of Appeals has explained:

> To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level. In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff.

Id. at 210 (citations, quotation marks, and brackets omitted).

As noted, plaintiff alleges that, as a result of inadequate security, he experienced stabbings on three separate occasions while detained within the Orleans Parish Prison system. He alleges that he was stabbed forty-three times in the first incident, five times in the second incident, and one time in the third incident. In his motion, Sheriff Gusman argues that no claim has been stated against him in either his official capacity or his individual capacity.

As to any official-capacity claim asserted against him, Sheriff Gusman is clearly correct. "Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, an official-capacity claim against Sheriff Gusman would in reality be a claim against

---

[5] Rec. Doc. 12.

the local governmental entity he serves. However, as the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, he must *identify* the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3. In the instant case, plaintiff does not allege that his constitutional rights were violated as a result of a policy or custom, much less identify such a policy or custom. Accordingly, he has failed to state a proper official-capacity claim against Sheriff Gusman.

That said, the Court finds that plaintiff has stated a cognizable failure-to-protect claim against Sheriff Gusman in his individual capacity. It is clear that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their

confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). The United States Fifth Circuit Court of Appeals has explained:

> To establish a failure-to-protect claim under § 1983, [an inmate] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted).

As an initial matter, the Court notes that Sheriff Gusman argues that he cannot be held liable in this lawsuit based on a theory of vicarious liability. On that point, he is obviously correct. See, e.g., Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability.").

That, however, does not resolve the matter, because plaintiff is arguing that he is attempting to hold Sheriff Gusman liable based on his own personal failures. Specifically, plaintiff alleges that Sheriff Gusman had actual knowledge that plaintiff was in danger because the rampant violence within the Orleans Parish Prison system was both obvious and widely known. For example, plaintiff alleges:

> Sheriff Marlin Gusman had actual knowledge of what was going on with incidents before my assault occurred. These conditions were "longstanding, pervasive, well-documented or expressly noted" by the press, other inmate assaults and famil[ies] that argued about their loved one's safety at Orleans Parish Jails. I've been stabbed three (3) different times in the same jail. ... There ha[ve] been videos of Orleans Parish Jails showing drugs and guns proving that this jail is unsafe. For the

foregoing reasons ..., defendant Sheriff Gusman does know what's going on in his jail.[6]

As already noted, the Court must accept such factual allegations as true for the purposes of this motion. Moreover, it is clear that such allegations, if true, are sufficient to state an individual-capacity claim against Sheriff Gusman. As the United States Supreme Court has explained, an inmate "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a *substantial risk* of serious harm." Farmer v. Brennan, 511 U.S. 825, 842 (1994) (emphasis added). The Supreme Court also further held: "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. (citation omitted). The Supreme Court noted, as plaintiff has himself quoted, that if an inmate "presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus "must have known" about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual

---

[6] Rec. Doc. 22, p. 2. The fact that these allegations are contained in plaintiff's opposition to the pending motion is of no moment. The United States Fifth Circuit Court of Appeals has held that in a case filed by a *pro se* plaintiff, the district court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed." Howard v. King, 707 F.2d 215, 220 (5th Cir. 1983). Therefore, a *pro se* litigant's supplemental filings that "embellish[] the original complaint's averments" should and will be considered in connection with the instant motion. See id.

knowledge of the risk.'" Id. at 842-43. Further, it makes no difference whether the defendant was aware of the danger posed to a specific inmate. The Supreme Court explained:

> Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. ... If, for example, prison officials were aware that inmate rape was so common and uncontrolled that some potential victims dared not sleep but instead would leave their beds and spend the night clinging to the bars nearest the guards' station, it would obviously be irrelevant to liability that the officials could not guess beforehand precisely who would attack whom.

Id. at 843-44 (citation, brackets, and ellipsis omitted).

While the foregoing does not necessarily mean that plaintiff will ultimately be able to prove his assertions at trial and win his case,[7] it does mean that his allegations, accepted as true, are sufficient to withstand the instant motion for judgment on the pleadings.

---

[7] For example, the Supreme Court cautioned:

> Because, however, prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment, it remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so. Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.
> In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.

Farmer, 511 U.S. at 844.

knowledge of the risk.'" Id. at 842-43.  Further, it makes no difference whether the defendant was aware of the danger posed to a specific inmate.  The Supreme Court explained:

> Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. ... If, for example, prison officials were aware that inmate rape was so common and uncontrolled that some potential victims dared not sleep but instead would leave their beds and spend the night clinging to the bars nearest the guards' station, it would obviously be irrelevant to liability that the officials could not guess beforehand precisely who would attack whom.

Id. at 843-44 (citation, brackets, and ellipsis omitted).

While the foregoing does not necessarily mean that plaintiff will ultimately be able to prove his assertions at trial and win his case,[7] it does mean that his allegations, accepted as true, are sufficient to withstand the instant motion for judgment on the pleadings.

---

[7] For example, the Supreme Court cautioned:

> Because, however, prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment, it remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety.  That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so. Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.
>
> In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.

Farmer, 511 U.S. at 844.

Moreover, this result is not changed by the fact that Sheriff Gusman alternatively argues in his motion that he is entitled to qualified immunity. Concerning qualified immunity, the United States Fifth Circuit Court of Appeals has explained:

> The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law, and courts will not deny immunity unless existing precedent placed the statutory or constitutional question beyond debate. Therefore, a plaintiff seeking to overcome qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.

Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013), cert. denied, 134 S. Ct. 1935 (2014).

Again, for the purposes of this decision, the Court must accept as true plaintiff's allegations that, due to the lack of adequate security, he was incarcerated under conditions posing a substantial risk of serious harm, that Sheriff Gusman had actual knowledge of that danger due to its obviousness and the history of pervasive violence at the jail, that Sheriff Gusman nevertheless failed to act to protect plaintiff from that danger, and that, as a result, plaintiff was stabbed in three separate incidents during his detention. Those allegations, if true, would violate plaintiff's clearly established right to be protected from violence under the Fourteenth Amendment as interpreted by Farmer and its progeny.

For the foregoing reasons, the official-capacity claim against Sheriff Gusman should be dismissed; however, the individual-capacity claim against him should be allowed to proceed at this time.

Lastly, as plaintiff was originally notified by the undersigned, his claim against the Orleans Parish Prison is improper. A prison may not be sued because it is merely a building, not a "person"

subject to suit under 42 U.S.C. § 1983. Bolden v. Orleans Parish Jail, Civ. Action No. 08-0728, 2009 WL 507045, at *2 (E.D. La. Feb. 26, 2009); Glenn v. Louisiana, Civ. Action No. 08-4817, 2009 WL 382680, at *2 (E.D. La. Feb. 11, 2009); Smith v. Orleans Parish Prison, Civ. Action No. 08-3786, 2008 WL 2951279, at *1 n.3 (E.D. La. July 25, 2008); Francis v. United States, Civ. Action No. 07-1991, 2007 WL 2332322, at *2 & n.4 (E.D. La. Aug. 13, 2007). Accordingly, under its screening authority, the Court should dismiss the claims against the Orleans Parish Prison as frivolous and/or for failing to state a claim upon which relief may be granted.[8]

---

[8] Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
>> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>> (i) is frivolous or malicious;
>> (ii) fails to state a claim on which relief may be granted; or
>> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

**RECOMMENDATION**

It is therefore **RECOMMENDED** that Sheriff Gusman's motion for judgment on the pleadings, Rec. Doc. 12, be **GRANTED IN PART AND DENIED IN PART**.  It is **RECOMMENDED** that the motion be **GRANTED** with respect to the official-capacity claim against him and that claim be **DISMISSED WITH PREJUDICE**.  It is **RECOMMENDED** that the motion be **DENIED** with respect to the individual-capacity claim against Sheriff Gusman.

It is **FURTHER RECOMMENDED** that the claim against the Orleans Parish Prison be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim upon which relief may be granted**.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[9]

New Orleans, Louisiana, this seventeenth day of June, 2014.

                                                      **SALLY SHUSHAN**
                                                      **UNITED STATES MAGISTRATE JUDGE**

---

[9] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.